**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTONIO COSTA | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MICHAEL CHERTOFF, Secretary of the | : | No. 07-2467 |
| Department of Homeland Security; | : | |
| EMILIO T. GONZALEZ, Director of the | : | |
| United States Citizenship & Immigration | : | |
| Services (USCIS); PAUL NOVAK, Director of | : | |
| the USCIS Vermont Service Center; | : | |
| DONALD MONICA, District Director of the | : | |
| USCIS Philadelphia District Office; and | : | |
| ROBERT S. MUELLER, III, Director of the | : | |
| Federal Bureau of Investigation, | : | |
| Defendants. | : | |

## ORDER AND MEMORANDUM

### ORDER

**AND NOW**, this 11th day of December, 2007, upon consideration of Defendants'

Motion to Dismiss (Document No. 4, filed August 16, 2007), and Plaintiff's Memorandum in

Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Motion for Summary

Judgment (Document No. 5, filed August 27, 2007), for the reasons set forth in the attached

Memorandum, **IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as to

defendant Robert S. Mueller, III, Director of the Federal Bureau of Investigation, and **DENIED**

as to defendants Michael Chertoff, Secretary of the Department of Homeland Security; Emilio T.

Gonzalez, Director of the United States Citizenship & Immigration Services (USCIS); Paul

Novak, Director of the USCIS Vermont Service Center; and, Donald Monica, District Director

of the USCIS Philadelphia District Office.

<u>**MEMORANDUM**</u>

Plaintiff, Antonio Costa, a legal permanent resident of the United States, seeks an order to compel the United States Citizenship and Immigration Services ("USCIS") to adjudicate his outstanding application for naturalization.  Plaintiff also seeks an order to compel the Federal Bureau of Investigation ("FBI") to issue the results of its criminal background check and/or name check on plaintiff to the USCIS.  Named as defendants are Michael Chertoff, Secretary of the Department of Homeland Security; Emilio T. Gonzalez, Director of the United States Citizenship & Immigration Services (USCIS); Paul Novak, Director of the USCIS Vermont Service Center; Donald Monica, District Director of the USCIS Philadelphia District Office ("USCIS defendants"); and, Robert S. Mueller, III, Director of the Federal Bureau of Investigation ("FBI defendant").

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over the case.  Because the Court concludes that the USCIS has a mandatory duty to adjudicate plaintiff's application, but that no statute or regulation expressly imposes a mandatory, non-discretionary duty on the FBI to perform and issue the results of background and name checks for naturalization applications, the Court grants defendants' motion to dismiss as to the FBI defendant, and denies the motion to dismiss as to the USCIS defendants.

## I.  BACKGROUND

Plaintiff, Antonio Costa, has been a legal permanent resident of the United States since June 22, 1994.  On February 4, 2005, he filed an Application for Naturalization (Form N-400) with the USCIS pursuant to 8 U.S.C. §§ 1427 and 1445.  On June 30, 2005,

USCIS scheduled plaintiff for an interview in connection with his naturalization application.  On July 24, 2005, USCIS cancelled the interview "due to unforeseen circumstances."  To date, USCIS has not rescheduled the interview.

Plaintiff filed this action on June 19, 2007, seeking relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, or, alternatively, the mandamus statute, 28 U.S.C. § 1361.  Plaintiff seeks to compel the USCIS to schedule an interview on his naturalization application and to issue a decision on that application.  Additionally, plaintiff seeks to compel the FBI to provide USCIS with a report covering its criminal background check and/or name check on plaintiff.  Notably, plaintiff does not seek any relief related to the merits of his application; instead, plaintiff asks the Court to compel the two agencies to complete the processing of his application within a reasonable period of time.  On August 16, 2007, defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.     LEGAL STANDARD–FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  Fed. R. Civ. P. 12(b)(1).  Plaintiff has the burden of establishing subject matter jurisdiction.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

"A challenge to a complaint for failure to allege subject matter jurisdiction is known as a 'facial' challenge, and must not be confused with a 'factual' challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges . . . ."  N.E. Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001) (citing

3

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); 5A Wright &

Miller, Federal Practice & Procedure § 1350, at 212-18 (West 1990)).   Plaintiff's complaint in

this case presents a factual challenge.

In assessing a Rule 12(b)(1) motion that presents a factual challenge to a court's

jurisdiction, the court is "free to weigh the evidence and satisfy itself as to the existence of its

power to hear the case. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and

the existence of disputed material facts will not preclude the trial court from evaluating for itself

the merits of jurisdictional claims." Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62,

69 (3d Cir. 2000) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d

Cir. 1977)).[1]


## III.    JURISDICTION

Plaintiff seeks to invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1331, in

conjunction with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and under

28 U.S.C. § 1361, the mandamus statute.  Defendants argue that the Court lacks jurisdiction over

this action because completion of background checks by the FBI and adjudication of

naturalization applications by the USCIS are discretionary actions, and the Court cannot compel

discretionary action under either the APA or the mandamus statute.

---

[1] A different rule is applicable to a motion under Rule 12(b)(1) which presents a facial
challenge to a complaint.  A court evaluating a facial challenge under that rule must accept the
allegations in the complaint as true.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d
Cir. 2000).  In reviewing a facial attack, a court may rely on documents referenced in the
complaint and attached thereto, but must view them in the light most favorable to the nonmoving
party.  See id. at 176; Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196
(3d Cir. 1993).

### A.    Jurisdiction Under 28 U.S.C. § 1361

28 U.S.C. § 1361 provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Under § 1361, "the test for jurisdiction is whether mandamus would be an appropriate means of relief."  Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980) (citing Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied*, 397 U.S. 941 (1970)).

In order to ensure that the writ will only issue in appropriate circumstances, a party seeking issuance of such a writ must demonstrate (1) that a public official has a well-defined and mandatory duty to perform a certain act, and the petitioner has a clear and indisputable right to have that act performed, and (2) that no other adequate remedy is available.  See Heckler v. Ringer, 466 U.S. 602, 616 (1984); Jones, 609 F.2d at 781.  The duty owed by the government must be "a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.'  An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt."  Harmon Cove Condo. Assoc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (quoting Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc)).

### B.    Jurisdiction Under the APA

"The APA does not provide an independent basis for federal jurisdiction."  Elhaouat v. Mueller, 2007 WL 2332488, at *3 n.5 (E.D. Pa. Aug. 9, 2007) (citing Califano v. Sanders, 430 U.S. 99, 107 (1977)).  Jurisdiction for an APA claim is based on federal question jurisdiction under 28 U.S.C. § 1331.

The APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of that action.  5 U.S.C. § 702.  The definition of "agency action" explicitly includes "failure to act."  5 U.S.C. § 551(13).  Under judicial review, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Moreover, the APA includes a general requirement that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

## IV.   DISCUSSION

### A.   Legal Standard

 "Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive."  Han Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) (Dalzell, J.) (citing Hernandez-Avalos v. I.N.S., 50 F.3d 842, 844-45 (10th Cir. 1995); Giddings v. Chandler, 979 F.2d 1104, 1108 (5th Cir. 1992); Jarecki v. United States, 590 F.2d 670, 675 (7th Cir. 1979)).  Accordingly, the Court will address jurisdiction under the APA and 28 U.S.C. § 1361, the mandamus statute, together, first as to the USCIS, then as to the FBI.

### B.   Claims Against the USCIS

In Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004), the Supreme Court held that "the only agency action that can be compelled under the APA is action legally required."  Consequently, an agency's delay in acting "cannot be unreasonable with respect to

6

action that is not required." Id. n.1.  Defendants, relying on Norton, argue that the time period

for adjudicating plaintiff's application is subject to the USCIS's discretion, and thus outside the

purview of both 28 U.S.C. § 1361 and APA § 706(1).  In other words, it is defendants' argument

that because the USCIS is not statutorily required to act on plaintiff's application within a

specific time frame, plaintiff cannot ask this Court to compel USCIS to do so.  This Court

disagrees.

       The discrete question at issue in this case is whether USCIS has discretion to adjudicate

applications for naturalization.  District courts within this Circuit and across the country are split

on this issue.  A minority of courts have sided with the defendants, holding that, because there is

no statutorily established time frame for adjudicating applications, the pace of adjudication is

within the discretion of the agency.  See, e.g., Li v. Gonzales, 2007 WL 1303000, at *6 (D.N.J.

May 3, 2007) (holding that "there is no statutory or regulatory provision compelling adjudication

within a certain time period, and a decision by immigration officials to withhold adjudication is

within their discretion");  Badier v. Gonzales, 475 F. Supp. 2d 1294, 1297 (N.D. Ga. 2006)

(same).  However, the majority of federal courts which have considered the issue, including

numerous judges in this District, have rejected defendants' argument, concluding that the USCIS

has a non-discretionary duty to adjudicate applications.  See, e.g., Kaplan v. Chertoff, 481 F.

Supp. 2d 370 (E.D. Pa. 2007); Elhaouat v. Mueller, 2007 WL 2332488 (E.D. Pa. Aug. 9, 2007);

Mocanu v. Mueller, et al., 2007 WL 2916192 (E.D. Pa. Oct. 3, 2007).  The Court finds the

reasoning of the majority persuasive.

       With respect to processing naturalization applications, the USCIS enjoys "some but not

unfettered discretion."  Elhauouat, 2007 WL 2332488, at *3.  The process of becoming a

naturalized citizen has four stages: (1) the N-400 naturalization application; (2) an investigation

and background check by the FBI; (3) an interview with USCIS; and (4) administration of the oath of allegiance.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.  Defendants are correct that there is no statutorily imposed time frame for this process, and thus, "the speed of processing [an application] may be 'discretionary' in the sense that it is determined by choice . . . ."  Liu Duan v. Zamberry, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007).

However, the USCIS regulations make it clear that there is a non-discretionary duty to adjudicate applications.  Specifically, 8 C.F.R. § 316.14(b)(1) provides that "[s]ubject to supervisory review, the employee of the Service who conducts the examination [on an application for naturalization] *shall* determine whether to grant or deny the application, and *shall* provide reasons for the determination . . . ."  Id. (emphasis added); see also Kaplan, 481 F. Supp. 2d at 399.

Accordingly, this Court, in agreement with the majority of courts, concludes that "the [USCIS] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."  Kaplan, 481 F. Supp. 2d at 399 (quoting Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)).  To the contrary, the USCIS has a mandatory, non-discretionary duty to adjudicate applications for naturalization, such as plaintiff's, within a reasonable period of time–"that neither Congress nor the agency has specified the time frame for doing so makes no difference."  Elhaouat v. Mueller, 2007 WL 2332488, at *4 (citing Pub. Citizen Health Research Group v. Chao, 314 F.3d 143, 152 (3d Cir. 2005)).  Thus, defendants' motion to dismiss is denied with respect to the claims against the USCIS defendants.

8

C.     **Claims Against the FBI**

Plaintiff contends that the FBI is required by law to provide criminal background and name checks to other federal agencies.  In support of this position, plaintiff cites the FBI's "organic act," 28 U.S.C. § 534, and the Immigration and Nationality Act, 8 U.S.C. § 1105. Alternatively, plaintiff relies on the Kaplan case, 481 F. Supp. 2d 370, in which the court found that the FBI had a mandatory duty to complete immigration background checks under appropriations measures and Congress's immigration regulation scheme.  However, no statute or regulation cited in Kaplan or by plaintiff expressly creates a mandatory duty owed by the FBI to individual naturalization applicants to process background and name checks and forward the results of these checks to the USCIS.  For that reason, this Court concludes plaintiff is not entitled to either APA or mandamus relief against the FBI defendant.

In Kaplan, the court determined that it had subject matter jurisdiction over the APA-based claims of naturalization and adjustment-of-status applicants against the FBI for unreasonable delay in completing background checks.  481 F. Supp. 2d at 401.  The Kaplan court acknowledged that "there appears to be no single statute that, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks," but found it "clear from a number of Congressional enactments" that Congress has imposed such a duty on the FBI "in these particular circumstances."  Id. at 400.  The Kaplan court pointed to three specific provisions to support its finding.

First, citing the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, 111 Stat. 2440 (1997) (hereinafter "Appropriations Act of 1998"), the Kaplan court noted that while USCIS has a mandatory duty to process immigration applications under 8 U.S.C. § 1446 and 8 C.F.R. § 316.14, Congress has

prohibited USCIS from doing so until it receives completed background checks from the FBI. 481 F. Supp. 2d at 400.  Second, citing the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1991, Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990) (hereinafter "Appropriations Act of 1991"), the Kaplan court noted that Congress has directed that the FBI "may establish and collect fees to process identification records and name checks for non-criminal justice, non-law enforcement employment and licensing purposes" like immigration background checks.  481 F. Supp. 2d at 400-01.  Finally, citing the Code of Federal Regulations Subsection on Applications for Naturalization, 8 C.F.R. § 334.2, the Kaplan court noted that Congress's immigration scheme requires aliens to submit application fees to USCIS, "a portion of which the CIS pays over to the FBI for fingerprint and name checks."  481 F. Supp. 2d at 401.

From the fact that Congress "conditioned CIS's mandatory action on the FBI's completion of background checks," together with the fact that applicants indirectly pay the FBI for background checks through fees paid to USCIS, the Kaplan court concluded that Congress has, "by implication, imposed on the FBI a mandatory duty to complete the background checks." Id.

In Antonishin, et al. v. Keisler, et al., 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007), the United States District Court for the Northern District of Illinois reached the opposite conclusion from the Kaplan court and granted a motion to dismiss the APA and mandamus claims of naturalization applicants against the FBI.  The court in Antonishin directly addressed Kaplan and, finding its logic unpersuasive, refused to follow that decision.  2007 WL 2788841, at *6. The Antonishin court noted that the Appropriations Act of 1998 is addressed to the USCIS, not the FBI, and "establishes conditions that USCIS must satisfy to access appropriated funds."  Id.

10

(emphasis added).  The <u>Antonishin</u> court thus concluded that it is "at best unclear whether Congress intended to impose any mandatory duty on the FBI" and declined to infer such a duty "based on an appropriations measure directed to a different agency."  <u>Id.</u> at *6-7.  This Court agrees with the reasoning of <u>Antonishin</u> and likewise declines to infer a mandatory duty owed by the FBI to individual naturalization applicants on the basis of the provisions of the Appropriations Act of 1998 directed to the USCIS.

Similarly, the Court finds that the fee provisions of the Appropriations Act of 1991 and 8 C.F.R.§ 334.2 do not, individually or in combination, impose upon the FBI a mandatory, non-discretionary duty to individual naturalization applicants to process background and name checks and to forward the results to the USCIS.  The language of the Appropriations Act of 1991, which states that the FBI "*may* establish and collect fees to process identification records and name checks," Pub. L. No. 101-515 (emphasis added), is permissive in nature, allowing the FBI to collect fees for processing background checks, but in no way imposing a clear, mandatory duty on the FBI to process background checks.  Similarly, Title 8 of the Code of Federal Regulations, Section 334.2, requires naturalization applicants to pay a fee to the USCIS, but makes no mention of the FBI.  Although the FBI receives a portion of these fees for performing background and name checks, this Court will not infer a mandatory duty on the part of the FBI based upon a regulation concerning "a different agency."  <u>Antonishin</u>, 2007 WL 2788841, at *6-7.

Finally, the other statutory provisions cited by plaintiff similarly fail to establish that the FBI has a mandatory duty to process name and background checks and to issue the results of such checks to the USCIS.  First, the Immigration and Nationality Act provisions cited by plaintiff, 8 U.S.C. § 1105(b)(1), (3), detail the FBI's duties regarding visa applicants and

11

applicants for admission to the United States, not naturalization applicants.  As such, these provisions have no applicability to this case.  Second, the FBI's "organic act," 28 U.S.C. § 534(a)(4), requires the Attorney General to "exchange [identification and criminal] records and information with, and for the official use of, authorized officials of the Federal Government, including the United States Sentencing Commission, the States, cities, and penal and other institutions."  This statutory provision is directed explicitly at the Attorney General, not the Director of the FBI, and cannot support subject matter jurisdiction over claims against the Director of the FBI.  Further, at most, this provision establishes a duty owed by the FBI, under the direction of the Attorney General, to the USCIS, to provide that agency with identification records.  Like many courts facing similar claims against the FBI in the adjustment-of-status context, this Court declines to extend that duty to an individual immigration applicant under either the APA or the mandamus statute.  See, e.g., Eldeeb v. Chertoff, et al., 2007 WL 2209231, at *22 (M.D. Fla. July 30, 2007).

## V.      CONCLUSION

In sum, the Court concludes that the USCIS has a mandatory duty to adjudicate plaintiff's application for naturalization.  Accordingly, as to the USCIS defendants, plaintiff has properly invoked the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, and the APA.  The Court further concludes that no statute or regulation expressly imposes a mandatory, non-discretionary duty on the FBI to perform and issue the results of background and name checks for naturalization applications.  Accordingly, the Court does not have subject matter jurisdiction over plaintiff's claims against the FBI defendant either under 28 U.S.C. § 1331 in conjunction with the APA or under 28 U.S.C. § 1361.  For the foregoing

reasons, defendants' motion to dismiss is denied as to the USCIS defendants[2] and granted as to the FBI defendant.

**BY THE COURT:**

  **/s/ Honorable Jan E. DuBois**   

**JAN E. DUBOIS, J.**

---

[2] The Court in so ruling, does not address the merits of plaintiff's application.